IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JTH TAX LLC d/b/a LIBERTY TAX SERVICE and
SIEMPRETAX+ LLC                                                          PLAINTIFFS

v.                                                      CIVIL ACTION NO. 1:21-CV-178-SA-DAS

EAGLE ONE BUSINESS SOLUTIONS, LLC,
BEVERLY McCARTER-HAIRSTON a/k/a BEVERLY D. HAIRSTON
DANIELLE TAYLOR HAIRSTON a/k/a TAYLOR HAIRSTON          DEFENDANTS

ORDER GRANTING DEFAULT JUDGMENT

Now before the Court is the Plaintiffs' Motion for Default Judgment [62], wherein they seek injunctive and monetary relief against Eagle One, Beverly Hairston, and Taylor Hairston ("the remaining Defendants"). The Court held a hearing on the Motion [62] and is now prepared to rule.

*Brief Background*

On November 22, 2021, the Plaintiffs filed their Complaint [1] against Larrita Conner, Eagle One, Beverly Hairston, and Taylor Hairston. In their Complaint [1], the Plaintiffs bring eleven claims, all of which originally stem from franchise agreements between them and Conner— their former franchisee.[1]

By way of background, the Plaintiffs allege that Liberty "is a franchisor of Liberty Tax Service® and SiempreTax+® income tax preparation service centers located throughout the United States, including the State of Mississippi." [1] at p. 5. The Plaintiffs further allege that Liberty owns a service mark, which was registered on August 21, 2001 and that "Siempre owns the registered SiempreTax+® trademarks, service marks, logos and deviations thereof[.]" *Id.*

---

[1] On November 29, 2023, the Court entered an Order [56] dismissing Conner from this lawsuit for lack of service of process upon her, thereby leaving the three remaining Defendants as the only active Defendants in the case.

The Plaintiffs contend that they entered into franchise agreements with Conner pursuant to which she operated Liberty and Siempre franchises in Starkville, Mississippi. The agreements, which were entered into on July 15, 2015 and August 3, 2015, carried five-year terms.[2] As part of the parties' contractual arrangement, the Plaintiffs provided Conner training in franchise operation, marketing, advertising, sales, and business systems, as well as providing her confidential information relating to the Plaintiffs' operations.

Under the franchise agreements, Conner agreed to pay the Plaintiffs monthly royalties and fees. The agreements also placed on Conner certain "post-termination obligations, which include, *inter alia*, immediate obligations to: cease use of any identification with the Marks; never hold out as a Liberty or SiempreTax franchisee or former franchisee; pay to Plaintiffs all debts due and [owing]; deliver all customer lists, tax returns, files, and records; return Liberty's confidential Operations Manual; and adhere to the Franchise Agreements' post termination non-competition and non-solicitation covenants." [1] at p. 8. The Complaint [1] also alleges the following as to post-termination obligations:

> 43. Pursuant to Section 10(b) of the Franchise Agreements, Conner agreed to a post termination covenant not to compete "for a period of two (2) years following the termination, expiration, transfer or other disposition of the Franchised Business . . . you agree not to directly or indirectly, for a fee or charge, prepare or electronically file income tax returns . . . within the Territory[ies] or within [] twenty-five miles of the boundaries of the Territory[ies]."

> 44. Pursuant to Section 10(d) of the Franchise Agreements, Conner agreed that "for a period of two (2) years following the . . . termination . . . of the Franchise Businesses . . . you will not within the Territory or within twenty-five (25) miles of the boundaries of the Territory[ies], directly or indirectly, solicit the patronage of any person or entity served by any of

---

[2] Conner entered into two separate sets of agreements with Liberty Tax and Siempre for one service territory on July 15, 2015 and August 3, 2015, respectively, as each set of agreements was for a different service territory.

> your Liberty [or SiempreTax] offices in the last twelve (12) months that you were a Liberty [or SiempreTax] franchisee . . . for the purpose of offering such person or entity, for a fee or charge, income tax preparation, electronic filing of tax returns, or Financial Products."

[1] at p. 8-9.

The Plaintiffs contend that "[i]n or around November 2019, Conner breached the Franchise Agreements by, *inter alia*, failing to submit certain required financial reports, failing to maintain required off season business hours, and failing to pay debts more than 30 days past due in the amount of $108,691.15." *Id*. at p. 10. After the Plaintiffs sent Conner a notice to cure the deficiencies and she failed to come into compliance, the Plaintiffs terminated the franchise agreements on March 3, 2020.

However, according to the Plaintiffs, "[f]ollowing the termination of the Franchise Agreements, Conner continued to offer tax preparation services in disregard of her contractual promise to refrain from competing with Liberty within 25-miles of her former Franchise Territories." *Id*. at p. 11. Importantly as to the remaining Defendants, the Plaintiffs allege that "Conner is offering tax preparation services through Eagle One, wherein Beverly Hairston is the President and Taylor Hairston is the Vice President." *Id*. Therefore, the Plaintiffs take the position that the remaining Defendants are liable to them for facilitating and perpetuating Conner's wrongful conduct. The Plaintiffs further contend that the Defendants operated Eagle One in the same location where Conner previously operated one of the Liberty franchise locations and "[i]n or around March of 2021, Defendants advertised Eagle One as 'EAGLE ONE BUSINESS SOLUTIONS FORMERLY LIBERTY TAX,' and displayed the [Liberty] Marks on the exterior of the tax preparation office that is now operating as Eagle One[.]" *Id*. at p. 12.

The Plaintiffs filed suit on November 22, 2021. As to the three remaining Defendants, the Plaintiffs assert claims for federal trademark infringement, false designation and misrepresentation in violation of the Lanham Act, federal trademark dilution, tortious interference with contract, violations of the federal Defend Trade Secrets Act of 2016, violations of the Mississippi Uniform Trade Secrets Act, unfair competition, and unjust enrichment.[3]

The Plaintiffs completed service of process as to Eagle One, Beverly Hairston, and Taylor Hairston relatively quickly. None of those Defendants responded or otherwise participated in this litigation. The Clerk of Court entered default against each of them. They remain in default.[4]

The Plaintiffs later filed the present Motion for Default Judgment [62] seeking the entry of judgment against the three remaining Defendants.

*Analysis and Discussion*

"Pursuant to 'Rule 55 of the Federal Rules of Civil Procedure, federal courts have the authority to enter a default judgment against a defendant who has failed to plead or otherwise defend upon motion of the plaintiff.'" *Gaskill-Clayborn v. Mighty Oaks Child Development Cntr., LLC*, 2020 WL 8642296, at *1 (N.D. Miss. Nov. 23, 2020) (citing *J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 813 (N.D. Tex. 2015)). "[T]here are three steps to obtaining a default judgment: first, default by the defendant; second, entry of default; and third, entry of a default judgment." *Id.* (citing *Gray v. MYRM Holdings, L.L.C.*, 2012 WL 2562369, at *3 (W.D. Tex. June 28, 2012)). The first two steps have been satisfied here. The only question before the Court is whether a default judgment should be entered.

---

[3] The Plaintiffs do not assert breach of contract claims against the remaining Defendants since none of them were a party to the franchise agreements.
[4] Service of process as to Conner proved difficult—and then impossible—for the Plaintiffs. The Court ultimately entered an Order [56] dismissing Conner on November 29, 2023.

"To determine whether a default judgment should be entered, the Court conducts a three-question analysis: (1) 'whether the entry of default judgment is procedurally warranted;' (2) 'whether there is a sufficient basis in the pleadings for the judgment;' and (3) 'what form of relief, if any, the plaintiff should receive.'" *Id.* (citing *J & J Sports*, 126 F. Supp. 3d at 814).

I.     *Procedural Justification*

"To determine whether a default judgment is procedurally warranted, a court should consider (1) 'whether material issues of fact are at issue;' (2) 'whether there has been substantial prejudice;' (3) 'whether the grounds for default are clearly established;' (4) 'whether the default was caused by a good faith mistake or excusable neglect;' (5) 'the harshness of a default judgment;' and (6) 'whether the court would think itself obliged to set aside the default on the defendant's motion.'" *American Fidelity Assurance Co. v. Archie*, 2023 WL 2776205, at *2 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)).

Turning to factor one, where a party fails to answer or respond to the complaint, there are no material facts at issue. *EW Polymer Grp., LLC v. GSX Int'l Grp., Inc.*, 622 F. Supp. 3d 232, 237 (M.D. La. 2022) (citing *Lindsey*, 161 F.3d at 893). Second, a party's failure to respond may prejudice a plaintiff because it "threatens to bring the adversary process to a halt, effectively prejudicing [its] interests." *American Fidelity Assurance Co.*, 2023 WL 2776205 at *2 (citation omitted). Third, the grounds for default (default and entry of default) are clearly established. *See id.* Fourth, no evidence in the record indicates that the failure to answer or respond to the Complaint [1] was a result of a good faith mistake or excusable neglect. Fifth, "[the] failure to file a responsive pleading or otherwise defend the instant lawsuit mitigates the harshness of a default judgment." *EW Polymer Grp., LLC*, 622 F. Supp. 3d at 237 (citing *Lindsey*, 161 F.3d at 893). Sixth, the record currently contains no facts that would oblige the Court to set aside the default judgment if

challenged. All factors currently weigh in favor of the Court's entry of default judgment for the Plaintiffs.

## II. Sufficient Basis in the Pleadings

Next, the Court must determine whether there is a sufficient basis in the pleadings for a default judgment. *Gaskill-Clayborn*, 2020 WL 8642296 at *1 (citing *J & J Sports Prods., Inc.*, 126 F. Supp. 3d at 814). "Even when a defendant is in default, a plaintiff is not 'entitled to a default judgment as a matter of right.'" *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022) (citation omitted). "[T]he Court must assess the merits of Plaintiff's claims and determine whether Plaintiff has a claim for relief." *EW Polymer Grp., LLC*, 622 F. Supp. 3d at 237 (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "[T]he factual allegations in the complaint must 'be enough to raise a right to relief above the speculative level.'" *American Fidelity Assurance Co.*, 2023 WL 2776205 at *3 (citing *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015)). "In conducting this analysis, 'the district court takes as true the facts asserted by a plaintiff against a defaulting defendant' because '[t]he defendant, by his default, admits the plaintiff's wellpleaded [sic] allegations of fact." *Id.* (citing *Escalante*, 34 F.4th at 492).

### A. Trademark Claims

In their briefing, the Plaintiffs group together their federal trademark infringement, false designation and misrepresentation of origin, trademark dilution, and unfair competition claims, asserting that "[e]ach trademark related claim requires the same or similar proof." [63] at p. 7.

"There are two elements to a successful infringement claim under the Lanham Act. The plaintiff must first establish ownership in a legally protectible mark, and second, show infringement by demonstrating a likelihood of confusion." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 235-36 (5th Cir. 2010) (citing *Bd. of Supervisors of La. State Univ. Agric.*

*& Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008)) (quotation marks and additional citations omitted). And "[a]s a general rule . . ., the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Boston Pro. Hockey Ass'n, Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.3d 1004, 1010 (5th Cir. 1975). A false designation of origin claim also requires proof of likelihood of confusion as the essential element. *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 818 (5th Cir. 2019). Similarly, the elements of a trademark dilution claim are:

> (1) plaintiff's ownership of a famous and distinctive mark; (2) use by the defendant of plaintiff's mark in a manner that dilutes that mark; (3) association between the parties' two marks due to similarity; and (4) the association between the parties' two marks is likely to impair the distinctiveness of the plaintiff's mark or harm the reputation of the plaintiff's mark.

*Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 536 (5th Cir. 2012).

The same facts in the Complaint [1], which are deemed admitted, are relevant to each of these claims.

The Complaint [1] clearly alleges the Plaintiffs' ownership of marks that are distinctive and well-known:

> 19. Liberty owns the service mark LIBERTY TAX SERVICE, Registration No. 2,314,991, which was registered on February 1, 2000.
>
> 20. Liberty owns the service mark LIBERTY TAX, Registration No. 2,465,670, which was registered on July 3, 2001.
>
> 21. Liberty owns the service mark , Registration No. 2,479,692, which was registered on August 21, 2001.
>
> 22. Siempre owns the registered Siempre Tax+® trademarks, service marks, logos and derivation thereof.

23.    Plaintiffs [have] spent substantial time and money advertising and promoting its distinctive and well-known tax-preparation system, which sells income tax preparation and filing services and products to the public under the Marks.

[1] at p. 5.

Additionally, the Complaint [1] alleges that the Defendants have taken advantage of the marks by utilizing them in furtherance of a rival tax business—Eagle One—and displaying them on the door of the rival tax business in an effort to obtain business. *See* [1] at p. 12-13.

The Complaint [1] sufficiently alleges facts to support the federal trademark claims, as well as the unfair competition claim.

### B.   *Defend Trade Secrets Act and Mississippi Uniform Trade Secrets Act*

The Defend Trade Secrets Act ("DTSA") and the Mississippi Uniform Trade Secrets Act ("MUTSA") "provide a private cause of action for misappropriation of a trade secret." *Seshadri Raju, M.D., P.A. v. Medtronic, Inc.*, 2021 WL 1232102, at *7 (S.D. Miss. Mar. 31, 2021) (citing 18 U.S.C. § 1836(b)(1); MISS. CODE ANN. § 75-26-7). The District Court for the Southern District of Mississippi has observed that "[g]enerally speaking, the elements required to establish a claim for misappropriation are the same under both the DTSA and the MUTSA." *Id*.

"To establish such a claim, a plaintiff must show: (1) the existence of a trade secret; (2) the acquisition, use or disclosure of the trade secret without consent; and (3) that the individual acquiring, using, or disclosing the trade secret knew or shown have known the trade secret was acquired by improper means." *Id*. (citations omitted).

"The DTSA defines 'trade secret' broadly. It includes 'all forms and types of financial, business, scientific, technical, economic, or engineering information' so long as (1) the owner of the trade secret has taken 'reasonable measures to keep such information secret' and (2) such

information 'derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by' another person." *Id.* (quoting 18 U.S.C. 18939(3)). The MUTSA's definition of "trade secret" is very similar. *See* MISS. CODE ANN. § 75-26-3(d).

Here, the Plaintiffs contend that their operations manuals, training manuals, training programs, methods of operation, marketing strategies, marketing programs, customer lists, and customer information constitute trade secrets as defined by the statutes. Based on the facts alleged, the Court concludes that this information, which was only disclosed pursuant to the franchise agreements and with specific parameters as to their utilization, constitutes trade secrets. The Complaint [1] alleges sufficient facts to establish the Defendants' misappropriation of the Plaintiffs' trade secrets:

> 151. Eagle One, Beverly Hairston, and Taylor Hairston were at all times aware, or should have been aware, that the information constituted trade secrets, which were confidential and proprietary to Plaintiffs, and which were derived from or through Conner—a person who owed a duty to maintain their secrecy and/or limit their use.

> 152. Without authority or consent from Plaintiffs, and upon information and belief, Eagle One, Beverly Hairston, and Taylor Hairston used Plaintiffs' confidential and proprietary trade secrets to obtain business for themselves, thereby misappropriating Plaintiffs' trade secrets and causing Plaintiffs to lose customers and goodwill.

[1] at p. 23-24.

Accordingly, there is a sufficient basis in the pleadings for a default judgment as to the Plaintiffs' DTSA and MUTSA claims.

C.  *Alternative Claims*

The Plaintiffs also bring claims against the Defendants for tortious interference with contract and unjust enrichment. They make clear in their most recent Memorandum [63] that they pursue these claims only in the alternative to their DTSA and MUTSA claims. The Court has already concluded that the Complaint [1] alleges sufficient facts to support the DTSA and MUTSA claims but will nonetheless address these alternative claims.

To prevail on a tortious interference with contract claim, a plaintiff must establish four elements: "(1) the acts were intentional and willful; (2) that they were calculated to cause damages to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damages and loss, without right or justifiable cause on the part of the defendant; and (4) that actual loss occurred." *U-Save Auto Rental of America, Inc. v. Miller*, 2014 WL 2154224, at *11 (S.D. Miss. May 22, 2014) (quoting *Jones v. Mullen*, 100 So.3d 490, 498 (Miss. Ct. App. 2012)).

The same facts addressed previously in connection with the other claims support this claim. For instance, the Complaint [1] alleges that the Defendants knew they had no right to continue to use the marks or customer lists and that Conner was contractually bound not to utilize them, yet the Defendants continued to utilize them in furtherance of their own business. Further, the Complaint [1] avers that:

> Eagle One, Beverly Hairston, and Taylor Hairston engaged in the improper conduct described herein, which induced Conner to breach the Franchise Agreements by: (a) operating Eagle One from her former Liberty franchise location . . . and (b) using Plaintiffs' Confidential Information—including but not limited to methods of operations, customer information and marketing information—to operate Eagle One and solicit Liberty's customers.

[1] at p. 19.

10

There is a sufficient basis in the pleadings for the entry of a default judgment as to tortious interference with contract.

Lastly, the Court turns to unjust enrichment. "To maintain a cause of action of unjust enrichment in Mississippi, the plaintiff need only allege and show that the defendant holds money which in equity and good conscience belongs to the plaintiff." *Davis v. ING Financial Advisers, LLC*, 2006 WL 8454341, at *4 (S.D. Miss. Apr. 26, 2006).

Based on the aforementioned allegations, the Court finds there is a sufficient basis in the pleadings for a default judgment on the unjust enrichment claim.

### III. Relief

"A default judgment is a judgment on the merits that conclusively establishes the defendant's liability. But it does not establish the amount of damages." *Center v. Total Body Contouring Inc.*, 2017 WL 1093203, at *6 (N.D. Miss. Mar. 23, 2017) (quoting *U.S. For Use of M-CO Const., Inc. v. Shipco. Gen., Inc.*, 814 F.2d 1011, 1015 (5th Cir. 1987)). "Rather, '[d]amages must be proven by a hearing or a demonstration of detailed affidavits establishing the necessary facts.'" *Id.* (quoting *J & J Sports*, 126 F. Supp. 3d at 813).

Here, the Plaintiffs seek injunctive relief, monetary damages, and attorney's fees.

The Court begins with injunctive relief. The Plaintiffs request the entry of a permanent injunction, "prohibiting Eagle One and the Hairston Defendants from using Plaintiffs' Marks[.]" [63] at p. 11.

Courts may issue injunctive relief in a trademark case "according to principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right of the registrant of a mark." *Philip Morris USA Inc. v. Lee*, 547 F. Supp. 2d 667, 680 (W.D. Tex. Mar. 6, 2008) (quoting *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 329 (5th Cir. 2006)).

"To merit injunctive relief, a plaintiff must demonstrate (1) success on the merits of trademark claims, and (2) irreparable harm." *Id*. (citing *Union Nat'l Bank v. Union Nat'l Bank*, 909 F.2d 839, 844 (5th Cir. 1990)).

Considering the facts of this case, the Court finds permanent injunctive relief to be warranted. The Defendants have completely disregarded the Plaintiffs' ownership of the marks and intentionally utilized the marks for their own financial gain. Permanent injunctive relief against the Defendants' utilization of the marks is appropriate.

The Plaintiffs also seek monetary damages. To support their damages calculation, the Plaintiffs rely on the declaration of Brian Panelo, Liberty's regional director. In his declaration, Panelo provides the following as to the Defendants' wrongful conduct and the profits derived therefrom:

> 12.     Per the [Internal Revenue Services' Electronic Return Original system ("ERO System")], Eagle One transmitted 184 returns in 2020, 143 returns in 2021, and did not file any returns in 2022. The ERO System provides that Eagle One filed its returns in the referenced years at a business located at 1909 1/2 Highway 45 N, Columbus, Mississippi 39705. Eagle One's business address is located within 25 miles of the Oktibbeha County line, which forms the boundaries of the MS038 Territory.

> 13.     Also, per the ERO system, Beverly Hairston transmitted 233 returns in 2020, 229 returns in 2021, and 171 returns in 2022. The ERO System provides that Beverly Hairston filed her returns in the referenced years at a business address located at 1407 Starkville Road, Crawford, Mississippi 39743. Beverly Hairston's business address is located within 25 miles of the Oktibbeha County line, which forms the boundaries of the MS038 Territory.

> 14.     Historically, during the period in which Conner operated as a franchisee of Plaintiffs, she charged an [average] net fee of $479.00, per return, within the MS038 Territory, and an average of $550.00, per return, within the MS091 Territory.

12

[62], Ex. 1 at p. 4-5.

The Plaintiffs request that the Court total the number of returns that Eagle One and Beverly Hairston transmitted (960) and multiply that number by $479.00 (the average fee that Conner charged in 2019 for filing a tax return) to arrive at a damage award of $459,840.00. *See* [62] at p. 2.

At the damages hearing, counsel for the Plaintiffs readily admitted that this calculation of damages was not necessarily precise but was the best way that the Plaintiffs could attempt to calculate damages, considering that the Defendants have, through their default, refused to participate in the discovery process. The fact that the Defendants have willfully failed to participate in this litigation and therefore precluded the Plaintiffs from pursuing a precise damage amount is not lost on this Court. And, on that point, there may be defenses to these figures, such as $479.00 not being the actual fee amount charged by the remaining Defendants. However, again, it was the Defendants who chose not to participate in this litigation and, under the circumstances, the Court finds the Plaintiffs' calculation of damages to be reasonable. *See*, *e.g.*, *Jones v. Malaco Music*, 2 F. Supp. 2d 880, 884 (S.D. Miss. Mar. 18, 1998) (citing *Richardson v. Canton Farm Equip., Inc.*, 608 So.2d 1240, 1250 (Miss. 1992)) ("Any compensatory damages awarded must be reasonable and calculated to make the plaintiff whole."). The Court will award $459,840.00 in monetary damages.

Finally, the Court turns to attorney's fees. "The Lanham Act authorizes a prevailing party to recover reasonable attorney's fees in 'exceptional cases.'" *Philip Morris*, 547 F. Supp. 2d at 681 (quoting *Seatrax, Inc. v. Sonbeck Int'l Inc.*, 200 F.3d 358, 372-73 (5th Cir. 2000); 15 U.S.C. § 1117). "The exceptional case is one in which the defendant's conduct is malicious, fraudulent, or willful, and requires a showing of a high degree of culpability." *Id*. (quoting *Martin's Herend*

13

*Imports v. Diamond & Gem Trading USA*, 112 F.3d 1296, 1305 (5th Cir. 1997)) (quotation marks and additional citation omitted). Notably, "[e]vidence of intentional infringement has been held to establish an exceptional case." *Id*. (citing *Taco Cabana Int'l, Inc., v. Two Pesos, Inc.*, 932 F.2d 1113, 1127-28 (5th Cir. 1991)).

The admitted facts in this case illustrate a pattern of intentional infringement on the Plaintiffs' rights. This is not the type of case where a defendant believed in good faith that the underlying conduct was lawful. *See, e.g.*, *American Registry of Radiologic Tech. v. Garza*, 2006 WL 5779969, at *6 (S.D. Tex. May 12, 2006) ("Thus, even if the Defendant acted deliberately, the case may still not be exceptional if the Defendant acted with what it in good faith believed was a legitimate right to use the mark or in a manner it legitimately believed would not cause confusion.") (citations omitted). Attorney's fees are justified in this case.

When the Court chooses to award attorneys' fees, the "lodestar" method is used for their calculation. *CrossFit, Inc. v. Columbus CrossFitness, LLC*, 2014 WL 2711972, at *3 (N.D. Miss. June 16, 2014). The lodestar method is calculated by multiplying the number of hours spent on the matter by a reasonable hourly rate for such work in the community. *Id*. After calculating the lodestar amount, the Court may adjust the amount of attorneys' fees based on the relative weight of the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Id*.

Beginning with the reasonableness of an attorney's hourly rate, the Court usually looks to prevailing rates in the community, competence, experience, and skill. *See Benham v. City of Jackson, Miss.*, 2022 WL 2033333, at *10 (S.D. Miss. June 5, 2022). However, "[w]hen an attorney's billing rate is not contested, it is *prima facie* reasonable." *DeArmond v. Alliance Energy*

14

*Services, LLC*, 2018 WL 2463207, at *5 (E.D. La. June 1, 2018) (citing *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995)).

Hiawatha Northington II submitted a declaration setting forth the experience and hourly rates of the attorneys who worked on this case. *See* [68]. Northington is a partner at Gordon Rees Scully Mansukhani, LLP with over 20 years of litigation experience. He requests an hourly rate of $325.00 per hour. Patrick K. Burns has over 13 years of litigation experience and also seeks an hourly rate of $325.00. JoAnna M. Doherty likewise has over 13 years of experience and seeks $325.00 per hour. An associate, Bryan Healy, has been engaged in the practice of law for approximately 6 years and seeks a rate of $265.00 per hour. The declaration also references Carla Tavares, a legal assistant with over five years of litigation experience, and requests a billing rate of $125.00 per hour. Attached to the declaration is an itemized list of the time the attorneys spent on the case. The rate for some of the billing entries included within the documentation is reduced. Overall, the Plaintiffs seek $60,605.03 in attorney's fees.

Notably, the documentation attached to Northington's declaration contains multiple entries by persons who are not referenced in the declaration. Specifically, there are entries by Peter G. Siachos, Kira N. Barrett, Davina J. James, Natasha Hayden Reid, Julia K. Whitelock, Tiffany din Fagel Tse, and Jay S. Gregory. The declaration provided no explanation as to who those individuals are or what their respective experience is. The Court will therefore wholly exclude those entries, as there is no basis for the Court to analyze their reasonableness. The total amount of these excluded entries is $10,971.69. Excluding those entries, the requested lodestar amount is $49,633.34.

"There is a strong presumption that the lodestar award established by the district court is the reasonable fee." *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 F. App'x 341, 341 (5th Cir.

2007) (per curiam) (citing *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1044 (5th Cir. 1999)). In exceptional cases, the Court may increase or decrease the lodestar based on the factors outlined in *Johnson*:

> (1) the time and labor required to represent the client or clients; (2) the novelty and difficulty of the issues in the case; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee charged for those services in the relevant community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 n.18 (5th Cir. 2006) (citing *Johnson*, 488 F.2d at 17-19).

The Fifth Circuit has cautioned that any *Johnson* factor already considered in the lodestar amount should be disregarded in determining whether the lodestar should be adjusted. *Hendrix v. Evergreen Hauling*, 2019 WL 138160, at *4 (N.D. Miss. Jan. 8, 2019) (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998)). The Plaintiffs make no argument as to the *Johnson* factors. The Court, though, finds it appropriate to give particular weight to factor eight—the amount involved and the results obtained. Although the Plaintiffs have succeeded in obtaining a default judgment in the case, the Court also notes that substantial time was expended in preparing for a request for a preliminary injunction, which was not granted. Additionally, counsel expended considerable efforts to attempt to obtain service of process on Conner. While the Court does not necessarily find it appropriate to exclude all time entries associated with those matters, it does find that those issues warrant a reduction from the overall amount. The Court finds it appropriate to

16

reduce the requested lodestar amount by 33%. After considering the applicable standard and all relevant factors, the Court will award $33,254.34 in attorney's fees.

Additionally, the Court finds that imposition of costs is warranted. *See* 15 U.S.C. § 1117(a). The Plaintiffs have submitted documentation supporting the costs incurred in prosecuting this case. That amount is $4,146.24. The Court finds that amount to be reasonable.

*Conclusion*

For the reasons set forth above, the Plaintiffs' Motion for Default Judgment [62] is GRANTED. Judgment is hereby entered in favor of the Plaintiffs and against Eagle One, Beverly D. Hairston, and Danielle Taylor Hairston.

The Defendants are hereby permanently ENJOINED from utilizing the Plaintiffs' marks, as defined in the Complaint [1] filed in this case and as addressed in detail above. The Plaintiffs shall serve the Defendants with a copy of this Order. Should the Defendants fail to comply, the Plaintiffs shall notify the Court in writing so that the Court can take appropriate action to ensure compliance.

The Defendants are jointly and severally liable to the Plaintiffs in an amount of $497,240.58, consisting of $459,840.00 in damages, $33,254.34 in attorney's fees, and $4,146.24 in costs. This amount is due and payable immediately.

This CASE is CLOSED. However, should the Defendants fail to comply with the Court's directives, the Plaintiffs may, if they so choose, file a request for the Court to take further action to enforce this Order.

SO ORDERED, this the 18th day of March, 2025.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE